NON-CONFIDENTIAL

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| GIORGIO FOODS, INC.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>　　　　　　Defendant. | Court No. 23-00133 |

## COMPLAINT

Giorgio Foods, Inc. ("Giorgio" or "Plaintiff"), through its attorneys, alleges and states as follows:

### JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), as this action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i).

2. Plaintiff contests certain factual findings and legal conclusions in the United States Department of Commerce's ("Commerce" or "the Department") less than fair value investigation of Certain Preserved Mushrooms from the Netherlands (Commerce Case No. A-421-815). The Department's final affirmative determination was published as Certain Preserved Mushrooms From the Netherlands: Final Affirmative Determination of Sales at Less Than Fair Value, 88 Fed. Reg. 18,115 (Dep't Commerce Mar. 27, 2023) (hereinafter, "Final Affirmative Determination") and the accompanying Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Preserved Mushrooms from the Netherlands, (Dep't Commerce Mar. 20, 2023) (hereinafter "I&D Memo"). In its final determination, the Department calculated a de minimis antidumping margin for Dutch

respondent Prochamp B.V. (hereinafter, "Prochamp"). See Final Affirmative Determination, 88 Fed. Reg. at 18,116. Following the U.S. International Trade Commission's issuance of its final unanimous affirmative injury determination,[1] Commerce published an antidumping duty order on imports of certain preserved mushrooms ("CPMs") from the Netherlands. See Certain Preserved Mushrooms From the Netherlands, Poland, and Spain: Antidumping Duty Orders, 88 Fed. Reg. 33,096 (Dep't Commerce May 23, 2023) (hereinafter, the "Order"). As a result of its calculation of a de minimis antidumping margin for Prochamp, the Department excluded CPMs produced and exported by Prochamp from the Order. See Order, 88 Fed. Reg. at 33,097, n.5.

## STANDING OF PLAINTIFFS

3.      Giorgio is a manufacturer, producer, and/or wholesaler in the United States of the domestic product that is like CPMs. Plaintiff was the Petitioner in the underlying agency investigation and actively participated in the investigation as a party to the proceeding. As such, Plaintiff is an interested party within the meaning of section 771(9)(C) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(9)(C), and Plaintiff has standing to bring this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINES OF THIS ACTION

4.      An antidumping order applying to imports of CPMs from the Netherlands issued as a result of Commerce's Final Affirmative Determination and the USITC Final Determination was published in the Federal Register on May 23, 2023 (see Order, 88 Fed. Reg. 33,096). Pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and U.S. CIT Rule 3(a), Plaintiff filed a Summons

---

[1]     See Certain Preserved Mushrooms From the Netherlands, Poland, and Spain, 88 Fed. Reg. 31,522 (USITC May 17, 2023) (hereinafter, "USITC Final Determination").

with this Court within 30 days of the date on which the <u>Order</u> was published in the <u>Federal Register</u> (<u>see</u> ECF No. 1, dated June 22, 2023) and this Complaint is being timely filed within 30 days of the filing date of the Summons.

## STATEMENT OF CLAIMS AND BASIS FOR RELIEF

## COUNT I

5.  Paragraphs 1 through 4 above are re-alleged and incorporated herein by reference.

6.  In determining "whether subject merchandise is being, or is likely to be, sold at less than fair value, a fair comparison shall be made between the export price or constructed export price and normal value." 19 U.S.C. § 1677b(a). In order achieve such "a fair comparison," the statute instructs the Department to determine the normal value as "the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price." 19 U.S.C. § 1677b(a)(1)(B)(i); <u>see also</u> 19 U.S.C. § 1677b(a)(1)(A). However, where Commerce "determines that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold in the exporting country is insufficient to permit a proper comparison with the sales of the subject merchandise to the United States," the Department may use "the price at which the foreign like product is so sold (or offered for sale) for consumption in a country other than the exporting country or the United States," <u>i.e.</u>, a third country. 19 U.S.C. § 1677b(a)(1)(C)(ii), (a)(1)(B)(ii).

7.  Moreover, "the aggregate quantity (or value) of the foreign like product sold in the exporting country shall normally be considered to be insufficient if such quantity (or value) is

less than 5 percent of the aggregate quantity (or value) of sales of the subject merchandise to the United States." 19 U.S.C. § 1677b(a)(1)(C).  Further, the Department may only use a third country price if "(I) such price is representative, (II) the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold by the exporter or producer in such other country is 5 percent or more of the aggregate quantity (or value) of the subject merchandise sold in the United States or for export to the United States, and (III) the administering authority does not determine that the particular market situation prevents a proper comparison with the export price or constructed export price." 19 U.S.C. § 1677b(a)(1)(B)(ii)(I)-(III).

8.     The Department has an established practice for selecting a third country market for purposes of calculating normal value.  Under 19 C.F.R. § 351.404(e), the Department first analyzes whether "{t}he foreign like product exported to a particular third country is more similar to the subject merchandise exported to the United States than is the foreign like product exported to other third countries." 19 C.F.R. § 351.404(e)(1).  The Department determines the "similarity" of products between markets by comparing the composition of sales in terms of salient product characteristics.  In other words, the Department assesses which of the potential comparison markets yields more matches with U.S. sales in terms of the number of product characteristics that make up the CONNUM.

9.     The Department announced its selection of Germany as the comparison market with respect to Dutch respondent Prochamp B.V. in a pre-preliminary memorandum stating that the "the market is viable," and "Prochamp's sales to Germany are similar to the product that that Prochamp sold to the U.S. market during the POI, Germany provides the largest volume of the

{merchandise under consideration ("MUC")}, and sales are made through the most similar channel of distribution and to the most similar type of customers when compared to the French and Israeli markets." Memorandum to Brendan Quinn, Acting Director, Office III, "Less-Than-Fair-Value Investigation of Certain Preserved Mushrooms from the Netherlands: Selection of Appropriate Third Country Market" at 7 (Aug. 26, 2022) (hereinafter, "<u>Third Country Market Memo</u>").

10. None of the Department's reasons for selecting Germany as the comparison market for Prochamp are supported by substantial evidence. <u>First</u>, Prochamp's reported volume of sales to Germany is demonstrably inaccurate, thereby undermining the Department's factual findings that Prochamp's sales to Germany are "viable" and "provide{} the largest volume of the MUC." <u>Id.</u>

11. <u>Second</u>, while the Department correctly found that "Prochamp's sales to France have the [                    ] to match with U.S. sales," it incorrectly determined that "the [                    ] outweighs the [                    ] overall quantity of MUC sold to the German market." <u>Id.</u> at 5. Contrary to the Department's characterization of the [                    ] – and hence difference in CONNUM matches – as [        ], there are only a very small number of matches between Prochamp's German sales and U.S. sales with respect to [            ] and nearly all French [            ] match [                ] of Prochamp's U.S. sales. <u>See</u> Letter to Sec'y of Commerce from Fox Rothschild LLP re: <u>Certain Preserved Mushrooms from the Netherlands: Submission of Prochamp B.V.'s Revised Third Country Market Supplemental Response</u>, at 3-4 (Aug. 25, 2022) (hereinafter, "2nd SCMQR"). Because [                ] is the [        ] most important

CONNUM characteristic, contrary to the Department's characterization, the difference in matches between the market is not [     ], but rather is highly significant. There is no evidence on the record – much less substantial evidence – to support the Department's conclusion that a difference between almost [  ] matches and nearly [    ] percent matches is [       ]. Moreover, in light of evidence that Prochamp's reported German sales volumes are inaccurate, the Department's weighing of these two factors is unsupported by substantial evidence.

12.     Third, the Department's determination that "the sales channel and type of customer in Germany is the most similar to the sales channel and type of customer in the United States, as the sales in Germany and the United States are made directly to unrelated customers, whereas in Israel and France, Prochamp sold the subject merchandise through an unaffiliated agent, which further supports the selection of Germany as the appropriate comparison market" is not supported by record evidence. Third Country Market Memo at 5. The record establishes that Prochamp had U.S. sales and French sales through [            ] -- [                                   ], but the company's German sales were through [          ]. Thus, this basis for the Department's selection of Germany as the third country market for Prochamp is also unsupported by substantial evidence.

13.     Given that each reason the Department identified for selecting Germany as the comparison market for Prochamp is not supported by substantial evidence, the Department's ultimate selection of Germany is also not supported by substantial evidence.

## **COUNT II**

14. Paragraphs 1 through 13 above are re-alleged and incorporated herein by reference.

15. The Department asserted that it was required to select a single comparison market early in the proceeding. See I&D Memo at 74-75. The Department then implied its determination is insulated from subsequent administrative challenges and judicial review. See id. The Department's explanation is both unsupported by substantial evidence and not in accordance with law.

16. As a factual matter, the Department did not select Germany as the third country comparison market early in the proceeding, but rather issued its determination four months after initiation of its investigation, and only two months prior to the extended deadline for issuing its preliminary determination. Moreover, Plaintiff challenged the Department's selection of Germany as the comparison market for Prochamp immediately following the Department's announcement of its decision. See, e.g., Letter from Kelley Drye & Warren LLP to Sec'y of Commerce re: Less-Than-Fair-Value Investigation of Certain Preserved Mushrooms from the Netherlands – Petitioner's Comments on Prochamp's Revised Third-Country Market Supplemental Response (Aug. 31, 2022). Plaintiff continuously challenged the Department's selection of Germany as the comparison market for Prochamp throughout the duration of the Department's investigation and, as is required by statute, raised the issue in its case brief to exhaust its administrative remedies. See 28 U.S.C. § 2367(d). The Department's explanation in the I&D Memo that it was unable to redress Plaintiff's claim because the agency is required to identify a comparison market early in the proceeding, therefore, is unsupported by substantial

evidence and is otherwise unlawful. The Department has several tools at its disposal throughout the investigation but failed to use them, resulting in a final determination that is not supported by substantial evidence and is otherwise not in accordance with law.

## COUNT III

17. Paragraphs 1 through 16 above are re-alleged and incorporated herein by reference.

18. The statute directs the Department to rely on facts available if necessary information is not on the record or an interested party: (1) withholds information that has been requested by the Department; (2) fails to provide such information by the deadlines established, or in the form and manner requested; (3) significantly impedes a proceeding; or (4) provides information that cannot be verified by the Department. See 19 U.S.C. § 1677e(a)(1), (2).

19. Further, the statute provides that if the Department determines "that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," the Department "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C § 1677e(b)(1).

20. During the course of this investigation, the Department instructed Prochamp to submit copies of its and its affiliates consolidated and unconsolidated financial statements on numerous occasions. In response to the Department's requests, Prochamp refused to submit *any* financial statements for these entities, claiming that neither it, nor any of its affiliates, prepare financial statements, and that Prochamp and its affiliates are not required to prepare such documents under Dutch law.

NON-CONFIDENTIAL

21. During verification, Prochamp provided Department officials with certain abbreviated 2021 financial statements for itself and several affiliates, despite having repeatedly refused to submit these financial statements during the entire course of the Department's investigation, and explicitly informing the Department such financial statement did not exist.

22. The Department's factual findings that Prochamp did not "withhold" these financial statements, "significantly impede" the investigation by failing to submit copies of the financial statements until verification, or fail to cooperate to the best of its ability by repeatedly refusing to submit the financial statements to the Department are not supported by substantial evidence.

## COUNT IV

23. Paragraphs 1 through 22 above are re-alleged and incorporated herein by reference.

24. The Department's acceptance of Prochamp's submission of substantial and significant new factual information during verification is contrary to law. The purpose of verification is for Department officials to confirm the accuracy of factual information submitted by a respondent, and verification is not an opportunity for a respondent to submit new factual information for inclusion in the administrative record. The Department has refused to accept significant new information during verification in many prior proceedings, and its decision to do so here without an adequate explanation for deviating from its past practice, is unlawful.

25. Moreover, the documents Prochamp submitted during verification lacked indicia of authenticity. The Department's acceptance of Prochamp's proffer of financial statements,

which Prochamp repeatedly and unequivocally asserted did not exist during the Department's investigation – and do not contain indicia of authenticity, is contrary to the agency's practice and law.

## COUNT V

26.     Paragraphs 1 through 25 above are re-alleged and incorporated herein by reference.

27.     The Department's findings that Prochamp did not withhold information, impede the investigation, or fail to cooperate by not acting to the best of its ability regarding the selection of an appropriate normal value methodology and normal value sales reporting is also unsupported by substantial evidence and contrary to law.

28.     The Department's initial questionnaire instructed Prochamp to notify the agency official in charge within 14 days of receipt of the questionnaire if its home market (*i.e.*, the Netherlands) might not be viable. Prochamp failed to provide any such notification to the Department, despite later claiming it had [   ] home market sales. The Department's explanation that Prochamp's failure in this regard was excusable is contrary to the plain language of the agency's questionnaire.

29.     In its initial response to the Department's Section A questionnaire, Prochamp reported that the three largest third country markets for its sales of CPMs during the period of investigation were Germany, Israel, and France. See Letter to Sec'y of Commerce from Fox Rothschild LLP re: Certain Preserved Mushrooms from the Netherlands: Submission of Prochamp B.V.'s Section A Response (June 21, 2022) (hereinafter, "AQR"). Prochamp also

stated that sales to Germany were "mostly on Free Carrier (FCA) incoterms" with "delivery {} taken in Netherlands." Id. at 3. As a result, Prochamp stated that it determined the quantity of sales to Germany based on "the customer's address," as well as the product's label being in the German language. See id. On this basis, Prochamp represented to the Department that Germany was its largest third country market.

30.  In response to a supplemental questionnaire, Prochamp reiterated that it determined the quantity of sales to the United States, as well as the quantity of sales to its second and third largest third country markets, based "on the basis of the port of destination/delivery or shipping address mentioned on the invoices." Letter to Sec'y of Commerce from Fox Rothschild LLP re: Certain Preserved Mushrooms from the Netherlands: Submission of Prochamp B.V.'s Response to Supplemental Section A Questionnaire, Part Two, at 2 (Aug. 1, 2022). For sales to Germany, however, Prochamp "considered the customer's address instead of the port of destination" because "the delivery is made in the Netherlands." Id. Prochamp also significantly revised the volume of sales reported for each of the third country markets in its supplemental questionnaire response, relative to its prior reporting to the Department.

31.  Prochamp failed to respond to many of the Department's questions regarding the country of consumption of its third country market sales. The information that Prochamp did submit, however, showed that Prochamp had sales in its home market – and that sales reported as destined for consumption in Germany were not sales that involved consumption in Germany, but instead were destined for consumption in other third country markets.

32.  During verification, Prochamp acknowledged that it is [

] Thus, Prochamp had an [

] Despite the issue of where Prochamp's sales were consumed being squarely addressed by the Department in several questionnaires, Prochamp did not supply the Department with the noted information, or even reveal its existence. Based on these circumstances, the Department's determination that Prochamp did not withhold any information concerning its home or third country market sales volumes, significantly impede the investigation, or fail to cooperate to the best of its ability are not supported by substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) Hold that Commerce's <u>Final Affirmative Determination</u> is not supported by substantial evidence and is otherwise not in accordance with law with respect to the claims advanced by Plaintiff in this Complaint;

(b) Remand the <u>Final Affirmative Determination</u> to Commerce with instructions to correct the errors set forth in this Complaint; and

NON-CONFIDENTIAL

(c)        Provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/John M. Herrmann_____
JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
(202) 342-8400
jherrmann@kelleydrye.com
prosenthal@kelleydrye.com
jmorey@kelleydrye.com

Counsel to Giorgio Foods, Inc.

Dated: July 21, 2023

## CERTIFICATE OF SERVICE AND NOTICE TO INTERESTED PARTIES

### Certain Preserved Mushrooms From The Netherlands
### CIT Court No: 23-00133

Pursuant to Rule 3(f) of the Rules of the Court of International Trade, I, John M. Herrmann, hereby certify that on July 21, 2023, copies of the foregoing Non-Confidential Complaint were served upon the following individuals and notified all the interested parties who were a party to the proceeding below, by certified mail, return receipt requested:

### UPON THE UNITED STATES

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278-0001

Bryan M. Boynton, Esq.
Principal Deputy Assistant Attorney General, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, N.W., Room 12124
Washington, DC 20530

### UPON THE U.S. DEPARTMENT OF COMMERCE

General Counsel
U.S. Department of Commerce
14th Street & Constitution Avenue, N.W.
Washington, DC 20230

Ms. Evangeline Keenan, Esq.
Director, APO/Dockets Unit
U.S. Department of Commerce
14th Street & Constitution Avenue, N.W.
Room 1874
Washington, DC 20230

**On behalf of Greenyard Prepared Netherlands BV and Prochamp, B.V., Wuensche USA Inc.**

Ronald M. Wisla, Esq.
Fox Rothschild LLP
2020 K Street, NW
Suite 500
Washington, DC 20006


**On behalf of Acme Food Sales, Inc.**

Kristen Smith, Esq.
Sandler, Travis & Rosenberg, P.A.
1300 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004-3002


**On behalf of the European Commission**

Caitlin Hickey
European Commission
Delegation of the European Union
2175 K St NW
Washington DC 20037


                                          /s/ John M. Herrmann
                                          JOHN M. HERRMANN
                                          KELLEY DRYE & WARREN LLP