## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| **GIORGIO FOODS, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES,** | ) | **Court No. 23-00133** |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **PROCHAMP B.V.,** | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |

_____)

## <u>ORDER</u>

Upon consideration of the *Final Results of Redetermination Pursuant to Court Remand* filed by the U.S. Department of Commerce ("Defendant") on November 14, 2024, Appx13794-13830 ("*Remand Redetermination*") (ECF No. 49), and all other papers and proceedings herein, it is hereby

**ORDERED** that the *Remand Redetermination* is not supported by substantial evidence and is otherwise not in accordance with law; and it is further

**ORDERED** that on remand, Defendant will instruct Prochamp B.V. to submit a database based on French sales; and it is further

**ORDERED** that Defendant will reconsider its selection of Germany, as opposed to France, as a comparison market for purposes of calculating normal value pursuant to 19 U.S.C. § 1677b(a)(1)(B)(ii) by relying on criteria other than the volume of sales in each market.

**SO ORDERED.**

_____
M. Miller Baker, Judge

Dated:_____
       New York, New York

NONCONFIDENTIAL

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| GIORGIO FOODS, INC., | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | )    Court No. 23-00133 |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| PROCHAMP B.V., | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

## PLAINTIFF'S COMMENTS ON REMAND REDETERMINATION

JOHN M. HERRMANN
JOSHUA R. MOREY
JULIA A. FOX
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Giorgio Foods, Inc.

January 29, 2025

**NONCONFIDENTIAL**

## Glossary

| Acronym | Item |
|---------|------|
| AT | country code for Austria |
| BE | country code for Belgium |
| DE | country code for Germany |
| NL | country code for the Netherlands |

NONCONFIDENTIAL

# Table of Contents

**Page**

I.    Summary of the Argument ............................................................. 1

II.   Commerce's Remand Proceeding ...................................................... 5

    A.    New Factual Information Placed on the Record by Commerce and Prochamp Is Inconclusive as to the Country of Consumption of Prochamp's Mushroom Sales ...................................................................... 5

    B.    Commerce's Remand Determination ..................................... 7

III.  Standard Of Review ........................................................................ 9

IV.   Argument ......................................................................................... 10

    A.    Commerce's Continued Reliance On German Comparison Market Data Remains Unsupported by Substantial Evidence ............................................................. 11

    B.    French Comparison Market Data Do Not Suffer From the Same Issues as the German Data, Contrary to Commerce's Attempts to Disparage Such Data .................. 16

V.    Conclusion ...................................................................................... 20

NONCONFIDENTIAL

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Consol. Edison Co. v. NLRB,*
   305 U.S. 197 (1938) ................................................................ 10

*Giorgio Foods, Inc. v. United States,*
   2024 Ct. Intl. Trade LEXIS 84, Slip Op. 2024-79 (July 17,
   2024) ............................................................................... *passim*

*MacLean-Fogg Co. v. United States,*
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ......................... 9

*Nippon Steel Corp. v. United States,*
   458 F.3d 1345 (Fed. Cir. 2006) ..................................... 10, 18

*OSI Pharms. LLC v. Apotex Inc.,*
   939 F.3d 1375 (Fed. Cir. 2019) ........................................... 16

*Universal Camera Corp. v. NLRB,*
   340 U.S. 474 (1951) ....................................................... 10, 18

*Yangzhou Bestpak Gifts & Crafts Co. v. United States,*
   716 F.3d 1370 (Fed. Cir. 2013) ...................................... 16-17

*Z.A. Sea Foods Priv. Ltd. v. United States,*
   569 F. Supp. 3d 1338 (Ct. Int'l Trade 2022) ................... 14-15

### Statutes and Regulations

19 U.S.C. § 1677b ................................................................. 15

19 U.S.C. § 1677b(a)(1)(B)(ii) ............................... 2, 3, 12, 14

19 C.F.R. § 351.404(e) .......................................................... 15

## Administrative Determinations

*Certain Lined Paper from India,*
 *Issued and Decision Memorandum for the Final Results of*
 *the Antidumping Duty Administrative Review 2020-2021*
 (Apr. 4, 2023)........................................................................ 14

Final Results of Redetermination Pursuant to Court Remand
 (Nov.14, 2024) ("*Remand Redetermination*") ...................................... 1

NONCONFIDENTIAL

## Plaintiff's Comments On Remand Redetermination

These comments, filed on behalf of Giorgio Foods, Inc. (hereinafter "Giorgio" or "Plaintiff"), challenge the U.S. Department of Commerce's ("Commerce" or the "Department") *Final Results of Redetermination Pursuant to Court Remand* filed on November 14, 2024, Appx13794-13830 ("*Remand Redetermination*"), ECF No. 49. The *Remand Redetermination* was issued pursuant to this Court's remand order in *Giorgio Foods, Inc. v. United States*, 2024 Ct. Intl. Trade LEXIS 84, Slip Op. 2024-79 (July 17, 2024) ("*Giorgio Foods*"), ECF No. 43. For the reasons below, Commerce's *Remand Redetermination* relies entirely on speculation, fails to correct the error identified by this Court and, therefore, is unlawful. These comments are timely filed pursuant to the Court's scheduling order dated December 16, 2024, ECF No. 53.

## I.    Summary of the Argument

In *Giorgio Foods, Inc. v. United States*, the Court remanded Commerce's final determination in the underlying antidumping duty investigation of certain preserved mushrooms ("mushrooms" or "preserved mushrooms") from the Netherlands. The Court instructed Commerce to reconsider its finding that Prochamp sold a "significantly

larger overall quantity" of mushrooms in Germany, as opposed to France or Israel. *See* Order at 1, July 17, 2024, ECF No. 44; *see also Giorgio Foods*, 2024 Ct. Intl. Trade LEXIS 84, at *15-16. Based on its determination that Prochamp sold a "significantly larger overall quantity" of mushrooms to Germany as compared to France or Israel, Commerce selected Germany as the third country comparison market and relied on Prochamp's German sales data for purposes of calculating normal value pursuant to 19 U.S.C. § 1677b(a)(1)(B)(ii). On remand, Commerce reopened and placed on the record new information that it asserts supports its finding that Prochamp sold a significantly larger quantity of sales for consumption in Germany than Prochamp sold for consumption in other potential comparison markets. Commerce's *Remand Redetermination* is wrong in two respects.

*First*, none of the new information placed on the record on remand demonstrates the volume of Prochamp's sales that were consumed in Germany. The number of stores operated by Prochamp's customer [      ], information on the German and Austrian population, and data on consumption of fresh (not preserved) mushrooms in both countries,

do not permit Commerce to identify accurately the volume of preserved mushrooms that Prochamp sold or offered for sale for consumption in Germany. Information on Germany's and Austria's populations, the number of stores in each country, and fresh mushroom consumption in Germany and Austria all are irrelevant in addressing the key question arising under 19 U.S.C. § 1677b(a)(1)(B)(ii) – where a product is "sold (or offered for sale) for consumption." Commerce's determination to rely on these general data sources is flawed by the same "speculation" that the Court identified in reviewing Commerce's final determination. *See Giorgio Foods*, 2024 Ct. Intl. Trade LEXIS 84, at *15-16. In particular, data on fresh mushroom consumption in Germany and Austria involves the population-wide consumption of a different product (*i.e.*, fresh mushrooms) and is irrelevant to Prochamp's sales of preserved mushrooms. Further, that information is irrelevant to sales of preserved mushrooms in Germany and Austria by Prochamp's customer's (*i.e.*, **[      ]**). As Commerce admits, "the record is devoid of information regarding the downstream distribution activities of

**{[      ]}** which could allow for any such quantification of this  amount."

Appx13807. Moreover, the additional customer correspondence Prochamp placed on the record only underscores that Commerce's relative apportionment, based on that information, is speculative and its determination to rely on German market data is unsupported by substantial evidence because the correspondence suggests distribution to countries beyond merely Germany and Austria.

*Second*, data on Prochamp's sales of preserved mushrooms in France do not suffer from the same flaws as the German comparison market data. Prochamp's sales in France, unlike the majority of its sales in Germany, were made pursuant to commercial terms that provide Prochamp with insights into end distribution. As a result, Commerce has on the record a more robust dataset that, unlike the information concerning Prochamp's claimed sales in Germany, largely lacks ambiguity as to whether Prochamp's mushrooms were sold or offered for sale for consumption in France.

## II.    Commerce's Remand Proceeding

### A.    New Factual Information Placed on the Record by Commerce and Prochamp Is Inconclusive as to the Country of Consumption of Prochamp's Mushroom Sales

In its decision remanding Commerce's final determination, the Court faulted Commerce for its assumption that "a multinational retailer that received Prochamp's mushrooms outside of Germany ultimately resold *all* of them in that country," when the record indicated that the retailer's (*i.e.,* [          ]) purchases may have been sold to consumers outside of Germany and did not contain the actual number of German sales. *Giorgio Foods*, 2024 Ct. Intl. Trade LEXIS 84, at *15. As the Court explained,

> The inconsistency matters because Commerce's choice of comparison market rested entirely on its conclusion that Prochamp's "*significantly* larger overall quantity" of sales in Germany for consumption "outweigh{ed} the "slight difference" in product similarity that otherwise pointed toward using France.

*Id.* (emphasis in original).

On remand, Commerce interpreted the Court as instructing the agency

> to quantify and account for the portion of the German market total which may reasonably reflect this heretofore unquantified amount of non-German consumed sales and evaluate whether Commerce's conclusions regarding Germany's relative advantage in size to other potential third-country markets remain supported with the non-German consumption accounted for and removed from the total.

Appx13806.

Because the record lacked information on the downstream distribution activities of Prochamp's customer, Commerce re-opened the record for

> the narrow purpose of addressing the remand concerns and specifically Judge Miller Baker's statements regarding the German third country data being inclusive of at least some sales which may have been consumed not in Germany.

Appx13831.

Commerce placed on the record

(1)    Information on the total number of stores operated in Germany and Austria by Prochamp's largest customer **[      ]**;

(2)    Population data for Germany and Austria;

(3)    Information on consumption of fresh mushrooms in Germany and Australia; and

(4)     Information on French speaking populations
        outside of France.

Appx13831-13868. In addition, Commerce invited the parties to submit

new factual information responsive to the "narrow purpose" for which

the agency reopened the record. Appx13831-Appx13832. To that end,

Prochamp placed on the record correspondence with **[                    ]**

customers, **[                    ]**, and information from the website of

its **[                    ]** indicating its countries of operation.

Appx13869-13943. Giorgio did not place new factual information on the

record, because Plaintiff did not have information to quantify and

differentiate **[        ]** sales for consumption in Germany versus other

countries.

### B.     <u>Commerce's Remand Determination</u>

Relying on this new information, Commerce "approximate{d}" the

quantity and value of preserved mushrooms Prochamp sold for

consumption in Germany and Austria. Appx13808. Commerce

determined that the total volume of mushrooms sold by Prochamp to its

customer **[        ]** for consumption in Austria to be "approximately 10

percent" of sales of German language-labeled mushrooms, because (1)

[        ] operates 255 stores in Austria (7.28 percent) and 3,250 stores in Germany (92.72 percent); (2) the Austrian population during the period of investigation was 9.72 percent of the German population during that time; and, (3) Austria's fresh mushroom consumption in 2021 was 18,179 metric ton or 10.38 percent of Germany's 157,000 metric consumption of fresh mushrooms. Appx13808.

Commerce then determined Prochamp's sales for consumption in Germany to be [                ] kilograms by: (1) reducing the total volume of Prochamp's sales to [        ] by a factor of 10 percent; and (2) removing certain [                ] sales to Prochamp's customer [                ] that correspondence Prochamp submitted on remand indicated may have been [

                ] *See* Appx13809, Appx13809 n.57. Commerce characterizes its calculation as "conservative" because it removed 10 percent of [        ] sales, not just those with the "DE/AT" (or Germany/Austria) label, and because the agency presumed all sales of [

                ] *See* Appx13810. Because the revised volume of Prochamp's

sales to the German market under Commerce's analysis remained larger than that to France, and nearly double that reported for Israel, the agency determined to continue to rely on German third-country comparison market data. Appx13811-13812.

Finally, Commerce asserted that information on Prochamp's sales of preserved mushrooms in France, while not subject to "comparable scrutiny" as the German market sales information, included (1) sales with an "NL/BE" label likely indicating consumption in French-speaking areas of Belgium and the Netherlands, (2) sales to a Monaco-based company based on that company's name with the Monaco incorporation acronym "SAM" (Société Anonyme Monégasque), and (3) sales to French Overseas Territories not consumed in mainland France. Appx13810-Appx13811. Commerce rejected France as a comparison market country. Appx13811-Appx12812, Appx13824-Appx13829.

## III.   Standard Of Review

In remand proceedings, the court will sustain Commerce's remand redetermination if it complies with the remand order, is supported by substantial evidence, and is otherwise in accordance with law. *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct.

NONCONFIDENTIAL

Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citations omitted). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). The court will uphold Commerce's determination when, in view of evidence on the "record as a whole," the agency's conclusion was reasonable. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

## IV. <u>Argument</u>

Commerce's *Remand Redetermination* suffers from the same legal flaws as its final determination. None of the information Commerce or Prochamp placed on the record quantifies the volume of preserved mushrooms that Prochamp sold or offered for sale in Germany, as opposed to other German-speaking markets. Rather than offering support, the information Commerce and Prochamp placed on the record introduces additional uncertainty regarding the countries of downstream distribution of Prochamp's preserved mushrooms. In

contrast, the comparison market data concerning Prochamp's sales of preserved mushrooms in France do not suffer from the same shortcomings as the German data.

### A. Commerce's Continued Reliance On German Comparison Market Data Remains Unsupported by Substantial Evidence

Commerce's selection of Germany as the comparison market for calculating normal value remains unsupported by substantial evidence, despite the additional information Commerce and Prochamp placed on the record on remand, namely (1) the number of stores operated by [       ] in Germany and Austria, (2) information on the population of Germany and Austria, (3) data on German and Austrian fresh mushroom consumption, and (4) correspondence between Prochamp and its customers. The information Commerce and Prochamp placed on the record does not – and cannot – answer the question Commerce set to answer – what quantity of Prochamp's mushroom sales were sold or offered for sale in Germany. *Cf.* Appx13806.

In Germany, unlike other markets, Prochamp made sales "mostly on Free Carrier (FCA) incoterms" and delivered merchandise in the Netherlands. Appx1705. Of those reported German sales, [       ]

percent were to [      ], and all were marked with the sales term [

      ] *See* Appx5182-Appx5186; Appx10071-10072. Although

preserved mushrooms may be sold or offered for sale in [      ] stores

located in both Germany and Austria, Commerce's *Remand*

*Redetermination* commits a logical error by generalizing the number of

[      ] stores to the quantity of Prochamp's preserved mushrooms

sold or offered for sale to [      ] in Germany and Austria, when

Austrian stores may stock mushrooms in higher quantities compared to

German ones, and *vice versa*. Likewise, and for the same reason,

Commerce erred in generalizing population and fresh mushroom

consumption data to [      ] sales of *preserved* mushrooms in those

two countries.[1] Commerce's simplistic calculation that the volume of

mushrooms sold by Prochamp to [      ] is "approximately ten percent"

of the total sales of German-labeled mushrooms rests on inconclusive

information and a faulty premise.

---

[1]    Further, actual consumption is not the lodestar of 19 U.S.C. § 1677b(a)(1)(B)(ii). The statute refers to the country in which product is "sold" or "offered for sale" for consumption. *Id.*

Further, Commerce is wrong to rely on the e-mail correspondence from Prochamp's customers **[                    ]** to conclude that the non-German sales by Prochamp's customers are irrelevant or "miniscule." Appx13823-Appx13824. **[**




**]** *See* Appx13896-13898, Appx13914-Appx13919. **[**




**]**[2]  Appx13913-Appx13919. Nowhere in the correspondence is any timeframe for these sales established, let alone one that coincides with the period of investigation. Appx13913-Appx13919.

In the case of **[            ]**, the company representative indicated that Prochamp's **[                ]** mushrooms may have been

---

[2]   For this reason, Commerce is incorrect to assert that the correspondence "unambiguously confirms that over 99 percent of Prochamp's sales to **[      ]** are consumed in Germany." Appx13824.

NONCONFIDENTIAL

[                                                                              ].

Appx13913-Appx13919. Commerce, rather than attempting to allocate

[                   ] mushrooms to [                             ] as it had with

[           ] sales, removed all sales of [

                                                                                  ]

*See* Appx13810. As with [           ] sales to Austria and Germany, there

is no information on the record that would enable Commerce to

determine the relative volumes of [                     ] sales that were made

in [                                         ] Although Commerce has applied a

"knowledge test" in at least one other proceeding to determine whether

a producer knew or should have known whether a sale is destined for a

certain customer and for consumption, here, the record has and

continues to show that Prochamp did not have knowledge of its

customers' downstream distribution activities.[3]

---

[3] For example, in *Certain Lined Paper from India*, Commerce selected Afghanistan as a third-country comparison market, because, based on sales documents, the producer in question had knowledge that the sales were destined for a customer and for consumption in Afghanistan. *See Certain Lined Paper from India, Issued and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review 2020-2021*, at 12 (Apr. 4, 2023) (Commerce Case No. A-533-843). Based on Plaintiff's research, Commerce does not appear to have an established practice of applying a "knowledge test" in identifying unrepresentative sales pursuant to 19 U.S.C. § 1677b(a)(1)(B)(ii). *See Z.A. Sea Foods Priv. Ltd. v. United States*, 569 F. Supp. 3d 1338, 1353 (Ct. Int'l Trade 2022) (finding that

(cont'd on next page)

NONCONFIDENTIAL

Commerce *is* correct that, absent "downstream distribution and sales information," quantification of Prochamp's sales or offers for sale for consumption to Germany is not possible, given the nature of Prochamp's sales into that market (*i.e.*, "mostly" FCA sales). *See* Appx13815. Commerce is incorrect, however, that requiring such information sets an "unrealistic standard," when Commerce's regulations *also* direct the agency to consider product similarities, volumes of sales, and other factors in selecting between third-country market data. *See* Appx13818; 19 C.F.R. § 351.404(e). This Court even alluded to this fact in its opinion ordering remand, noting "{i}f the Department is unable to reasonably determine Prochamp's sales volumes in the comparison-market candidate countries, *nothing in the regulation requires the agency to rely on that criterion*" (although Plaintiff submits that the French data do not suffer the same flaws). *See Giorgio Foods*, 2024 Ct. Intl. Trade LEXIS 84, at *16 n.16 (emphasis added).

---

Commerce did not depart from past practice in declining to apply a knowledge test in weighing third-country sales data, when "Commerce employs a knowledge test under 19 U.S.C. § 1677b to determine whether a producer "knew or should have known that the merchandise was . . . for home consumption" such that the sales should be included in the home market database" (internal citations omitted)).

For the foregoing reasons, the record remains "devoid of information regarding the downstream distribution activities of" [      ]. *See* Appx13806. Commerce's approximation of the volume of mushrooms sold by Prochamp to [      ] is speculative and not supported by substantial evidence, as is the agency's wholesale removal of [

      ] *See OSI Pharms. LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("'Mere speculation' is not substantial evidence.") (citing *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017)). Consequently, Commerce's conclusion that, again, the German market is "significantly larger" than alternative markets does not constitute substantial evidence supporting its selection of Germany as the comparison market.

## B. French Comparison Market Data Do Not Suffer From the Same Issues as the German Data, Contrary to Commerce's Attempts to Disparage Such Data

Because Commerce's selection of Germany as the comparison market continues to rest on a fundamentally flawed premise and specious evidence, the Court should direct Commerce to reconsider France as an alternative and instruct Prochamp to submit a French sales database. *Cf. Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d

1370, 1380 (Fed. Cir. 2013) ("Although Commerce argues in its Final
Remand Results that it was the best it could do because of the limited
record, this court finds no support in this court's precedents or the
statute's plain text for the proposition that limited resources or
statutory time constraints can override fairness or accuracy.") The same
issues plaguing the German comparison market data do not also exist
in the French data – and, as Commerce admits, other factors including
product similarity support the selection of France. *See* Appx13804.

As an initial matter, although some of Prochamp's sales to **[      ]**
had country codes NL/BE indicating sales to the "Netherlands" or
"Belgium," not "France," only **[         ]** kilograms of sales identified in
Prochamp's purchase orders had those country codes (*i.e.*, **[      ]**
percent of the volume reflected on purchase orders). *See* Appx5187-
Appx5191. On the other hand, **[      ]** percent of Prochamp's sales has
the product codes DE/AT, indicating potential sales for consumption in
Austria or Germany. *See* Appx13991-14003. Commerce is wrong to
assert similarity between the two comparison country markets, when,
unlike sales to **[      ]** with country codes DE/AT, there is no dispute

that mushrooms with NL/BE labels were not distributed for consumption in a potential comparison market (*i.e.*, France). *See* Appx13824-13825.

Plaintiff does not suggest Commerce should apply a "different interpretive framework" to the German and French comparison market data, but rather that the agency consider all of the record evidence before it, including detracting evidence. *See* Appx13827; *see Universal Camera Corp.*, 340 U.S. at 488; *see also Nippon Steel Corp.*, 458 F.3d at 1350–51. As noted, unlike sales to Germany that Prochamp made largely under the FCA incoterm (and **[**

**]**), its sales to France were sold to end users and through selling agents. *See* Appx5187-Appx5191. Because of this difference in commercial terms, Prochamp has more insight into the downstream distribution of its preserved mushrooms in the French market than in Germany, and Commerce may more precisely identify those sales to France for purposes of selecting a comparison market.

Indeed, there is no evidence that sales of French-labeled products to a Monaco-based company (as indicated by the suffix SAM or Société

Anonyme Monégasque) and to French Overseas Territories were consumed other than in France. Setting aside that the agency has not identified any evidence that French-labeled sales to a Monaco-based company may not have been consumed in France, the total volume of these sales is only **[          ]** kgs., representing just **[      ]** percent of the volume reflected on purchase orders. *See* Appx5187-Appx5191. Commerce also does not disagree that Prochamp's sales to **[**

**]** Appx5187-Appx5191. As Commerce concedes, although **[                    ]** products have dual French and German product labels, "the existing record fully supports that Prochamp attributed these sales to the correct market." Appx13827-Appx13828.

   Therefore, based on the current record, French comparison market data do not suffer from the same problems as the German sales database. Commerce erred by failing to consider this detracting

evidence and in selecting Germany as the third-country comparison market.

## V.    <u>Conclusion</u>

For the reasons discussed above, Plaintiff respectfully urges this Court to determine that Commerce's *Remand Redetermination* is not supported by substantial evidence and is not otherwise in accordance with law. Plaintiff urges this Court to remand the *Remand Redetermination* with instructions to reconsider its determination as set forth above.

Respectfully submitted,

<u>/s/ John M. Herrmann</u>
JOHN M. HERRMANN
JOSHUA R. MOREY
JULIA A. FOX
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Plaintiff

Dated: January 29, 2025

**CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES**

Pursuant to this Court's Order dated December 16, 2024, (ECF No. 53), setting the word limitation for Plaintiff Giorgio Foods, Inc.'s Comments on Remand Redetermination to 10,000 words, counsel for Plaintiff certifies that the attached Comments on Remand Redetermination contains 3,518 words, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft 365 – Enterprise.

Respectfully submitted,


 /s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY
JULIA A. FOX
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
 202) 342-8400

Counsel to Plaintiff

Dated:  January 29, 2025