# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| GIORGIO FOODS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES, | ) | Court No. 23-00133 |
| Defendant, | ) | |
| and | ) | |
| PROCHAMP B.V., | ) | |
| Defendant-Intervenor. | ) | |

_____

## <u>ORDER</u>

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, all responses thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety; and further

ORDERED that final judgment is entered in favor of the United States.

Dated: _____, 2025    _____
       New York, NY                M. MILLER BAKER, JUDGE

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ———————————————————— ) | |
| GIORGIO FOODS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 23-00133 |
| v. ) | |
| ) | PUBLIC |
| UNITED STATES, ) | VERSION |
| ) | |
| Defendant, ) | Business Proprietary |
| ) | Information denoted |
| and ) | by brackets on pages |
| ) | 6, 10, 13 |
| PROCHAMP B.V., ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ———————————————————— ) | |

## DEFENDANT'S RESPONSE
## <u>TO PLAINTIFF'S COMMENTS ON REMAND RESULTS</u>

YAAKOV M. ROTH
Acting Assistant
    Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:

RUSLAN KLAFEHN
Attorney
Office of the Chief Counsel
    for Trade Enforcement &
    Compliance
U.S. Department of Commerce
1401 Constitution Avenue, NW
Washington, DC 20230

DANIEL BERTONI
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-7968

February 28, 2025

Attorneys for Defendant

# <u>TABLE OF CONTENTS</u>

BACKGROUND ....................................................................................... 1

    I.    Commerce Chose Germany As The Third-Country
        Comparison Market For Determining Normal Value ............ 1

    II.   On Remand, Commerce Reviewed New Factual
        Information And Reaffirmed Its Selection of Germany ......... 4

ARGUMENT ........................................................................................... 7

    I.    Standard of Review ................................................................. 7

    II.   Commerce Complied With The Court's Order And
        Reasonably Relied On New Record Information To Select
        Germany As The Third-Country Comparison Market ........... 8

        A.    Commerce's Calculation Of Prochamp's Net German
             Market Sales Volume Is Supported By Substantial
             Evidence And Complies With The Remand Order ...... 11

        B.    Commerce's Adjustment Of Prochamp's German Sales
             Volume Is Supported By Substantial Evidence And
             Complies With The Remand Order ............................. 14

    III.  Giorgio's Championing Of France As A Third-Country
        Comparison Market Elides Difficulties With Prochamp's
        French Sales Data And Ignores The Smaller Volume Of
        French Sales ......................................................................... 17

CONCLUSION ..................................................................................... 22

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

*Ad Hoc Shrimp Trade Action Comm. v. United States,*
    802 F.3d 1339 (Fed. Cir. 2015) ............................................................... 18

*Bethlehem Steel Corp. v. United States,*
    223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) .......................................... 7

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ................................................................................ 8

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ........................................................................ 8, 18

*Daewoo Elecs. Co. v. Int'l Union of Elec. Elec., Tech., Salaried &*
    *Mach. Workers, AFL-CIO,* 6 F.3d 1511 (Fed. Cir. 1993) ................. 8, 14

*Fla. Gas Transmission Co. v. FERC,*
    604 F.3d 636 (D.C. Cir. 2010) ............................................................. 12

*Giorgio Foods, Inc. v. United States,* No. 23-00133,
    2024 WL 3534491 (Ct. Int'l Trade July 17, 2024) ....................... *passim*

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) .......................................... 7

*Matsushita Elec. Indus. Co. v. United States,*
    750 F.2d 927 (Fed. Cir. 1984) ................................................................ 8

*Nippon Steel Corp. v. United States,*
    732 F. Supp. 3d 1353 (Ct. Int'l Trade 2024) ........................................ 16

*Yangzhou Bestpak Gifts & Crafts Co. v. United States,*
    716 F.3d 1370 (Fed. Cir. 2013) ...................................................... 19, 20

*Z.A. Seafoods Private Ltd. v. United States*,
 569 F. Supp. 3d 1338 (Ct. Int'l Trade 2022) .........................................17

## **STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................................7

19 U.S.C. § 1677a..........................................................................................17

19 U.S.C. § 1677b.....................................................................................2, 16

## **REGULATIONS**

19 C.F.R. § 351.404(e)....................................................................................2

Defendant, the United States, respectfully submits this response
to the comments by plaintiff, Giorgio Foods, Inc. (Giorgio), concerning
the results of Court's remand to the Department of Commerce.  *See
Final Results of Redetermination Pursuant to Remand Order* (July 17,
2024), ECF No. 49-1; Appx13794.  We respectfully request that the
Court sustain the remand results because they are supported by
substantial evidence, are otherwise lawful, and comply with the Court's
instructions on remand.  *See Giorgio Foods, Inc. v. United States*, No.
23-00133, 2024 WL 3534491, *7 (Ct. Int'l Trade July 17, 2024) (*Remand
Order*).

## **BACKGROUND**

I.    Commerce Chose Germany As The Third-Country Comparison
      Market For Determining Normal Value

On April 20, 2022, following the filing of a petition by Giorgio,
Commerce initiated a less-than-fair-value investigation of certain
preserved mushrooms (mushrooms) from the Netherlands.  Appx10555-
10559.  Because Prochamp did not have a viable home market for its
mushrooms, Commerce selected Germany as the most comparable
third-country market for determining normal value, because
Prochamp's sales in Germany were significantly larger than in France

or Israel, and because the mushrooms sold in those countries were all very similar to the mushrooms sold in the United States.[1]  Appx1082; Appx1003-1004.

When analyzing Prochamp's third-country sales, Commerce decided to rely on the language labelling of the mushrooms to determine the country where they would ultimately be sold for consumption. Appx10072-10073.  Commerce adopted this approach because some of Prochamp's customers are large retailers with stores in multiple European countries.  Commerce acknowledged that the labelling methodology came with limitations.  Specifically, Prochamp's sales to its largest customer, which otherwise reflected a German-language label, were listed with a product code identifier in Prochamp's system

---

[1]  Commerce evaluates potential dumping of merchandise by comparing its export price or constructed export price with its normal value.  19 U.S.C. § 1677b(a).  Although normal value is typically the price at which merchandise is sold in an exporter's home market, Commerce calculates normal value from third-country market prices when the volume of sales in the home market is less than five percent of the volume of sales in the United States.  *Id.* § 1677(a)(1)(B)(ii), (C)(ii). When, as in Prochamp's case, multiple countries would potentially qualify as third-country markets under the statute, Commerce selects a single third country by the weighing the similarity of the product, the respective sales volumes, and other factors.  19 C.F.R. § 351.404(e); *Giorgio Foods*, 2024 WL 3534491 at *1 & n.2.

identifying them with a "DE/AT" label code, implying that such sales could be distributed by the customer for consumption in retail locations either in Germany or Austria. Appx10071-10072. Accordingly, Commerce acknowledged that at least some of the sales coded as German could be destined for ultimate consumption in Austria. Appx10074. But Commerce found that this possibility did not detract from the selection of Germany as the third-country market selection or the overall reliability of Prochamp's German-market sales data. *Id.*; Appx1082.

Giorgio challenged Commerce's selection of Germany as the comparison market. Pl. Rule 56.2 Mot. for J. on the Agency R. at 35-57, ECF No. 24. Giorgio argued that Prochamp's German sales data did not support Commerce's conclusion that Germany had a significantly larger sales volume than other possible third-country markets. *See id.* at 54-56. Instead, Giorgio argued that Commerce should have selected France. *Id.* at 56.

On July 17, 2024, this Court remanded Commerce's determination with respect to the selection of Germany as the third-country market. The Court instructed Commerce to reconsider its finding that Prochamp

sold a "significantly larger overall quantity of mushrooms" in the German market. *Giorgio Foods*, 2024 WL 3534491 at *7. The Court reasoned that Commerce's conclusion did not adequately account for the quantity of mushrooms — as yet unknown from the record — that were likely sold for consumption in Austria. *Id.*

II.  On Remand, Commerce Reviewed New Factual Information And Reaffirmed Its Selection of Germany

On remand, Commerce decided to quantify and account for the portion of Prochamp's German sales that might have been consumed in Austria. Appx13831. Commerce placed on the record German and Austrian population data, retail store data, mushroom consumption data, and data regarding French-speaking populations outside France. Appx13831-13832. Commerce then invited parties to comment on the new factual information. Appx13832.

Prochamp responded with additional information detailing which products sold to its customers were distributed either exclusively in Germany, or "mainly" but not exclusively in Germany. Appx13869-13872. Giorgio did not submit further information.

After releasing a preliminary remand determination and considering the parties' comments, Commerce decided that Germany

remained the appropriate third-country market. Appx13794-13795.

Based on the new information in the record, Commerce was able to

remove potential Austrian sales from the German database. Commerce

observed that the combined Austrian and German population in 2021 of

92.156 million comprised 83.2 million Germans (90.28 percent) and

8.956 million Austrians (9.72 percent). Appx13808; Appx13854-13855.

Commerce then noted that in 2021-22, the two countries consumed a

total of 175,179 metric tons of mushrooms, of which 157,000 metric tons

(89.62 percent) were consumed in Germany and 18,179 metric tons

(10.38 percent) were consumed in Austria. Appx13808; Appx13857-

13858. Finally, Commerce recognized that, of a total of 3,505 retail

locations Prochamp's largest German customer operates in the two

countries, 3,250 (92.72 percent) were located in Germany and 255 (7.28

percent) were in Austria. Appx13808; Appx13844.

Commerce therefore adopted the conservative presumption that

ten percent of Prochamp's reported German sales to its largest customer

were actually consumed in Austria. Appx13808. Commerce then

further reduced Prochamp's reported German sales by the amount that

had previously been identified as destined for Switzerland and also

deducted a set of Prochamp's sales to another customer that the customer reported were distributed in both Germany and another European country.  Appx13809; Appx13914-13915.

After completing its review, Commerce concluded that the quantity of Prochamp's mushrooms consumed in the German market was [                                                    ] than in France.  Appx13809. Commerce further observed that its calculation of German consumption was likely an underestimate, because Commerce had applied the presumption of ten percent Austrian consumption to all of Prochamp's German-coded sales to its largest customer, not just those that bore the DE/AT label.  Appx13810.  Further, Commerce had removed from the total all sales to another customer of a specific line of mushrooms that the customer indicated were distributed in both Germany and another European country.  *Id.*

Commerce then observed that Prochamp's reported French sales were likely an overestimate, because some sales bore "NL/BE" labelling (indicating consumption in Francophone regions of the Netherlands and Belgium), and some sales reported as French were made to a company incorporated in Monaco.  Appx13811; Appx5188-5191.  Commerce also

noted — without taking a position on the scope of the French market — that Prochamp's largest French invoices detailed sales to a location in Overseas France, which would be unlikely to be consumed in Metropolitan France.  Appx13811; Appx5034; Appx5052; Appx5063.

Therefore, because the German market remained "significantly larger" than both the French and Israeli markets, Commerce retained Germany as the third-country market, with the result that Commerce did not alter Prochamp's margin.  Appx13810; Appx13830.

## **ARGUMENT**

### I.    Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002) (citations omitted).  Thus, in remand proceedings, the Court should sustain Commerce's determinations "if they are in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law."  *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The possibility of drawing inconsistent conclusions from the record does not prevent Commerce's finding from being supported by substantial evidence. *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). The question for the Court is whether Commerce's determination is supported by "the evidence and reasonable inferences from the record." *Daewoo Elecs. Co. v. Int'l Union of Elec. Elec., Tech., Salaried & Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984)).

II.  **Commerce Complied With The Court's Order And Reasonably Relied On New Record Information To Select Germany As The** <u>**Third-Country Comparison Market**</u>

As described above, Commerce's remand determination is supported by new evidence on the record and responds directly to the Court's concern about the portion of Prochamp's reported German sales that might be consumed in Austria. *See Giorgio Foods*, 2024 WL 3534491 at *7. Therefore, the Court should sustain Commerce's remand determination.

Giorgio contends that Commerce's selection of Germany as the third-country comparison market is unsupported by substantial evidence, in spite of the new information on the record, because "{n}one of the information Commerce or Prochamp placed on the record quantifies the volume of preserved mushrooms that Prochamp sold or offered for sale in Germany." Pl. Comments on Remand Redetermination 10 (Pl. Comments). In contrast to Giorgio's assertion, by reopening the record and assessing additional information on the issue of German and Austrian mushroom markets and consumption, Commerce has reasonably accounted for Prochamp's Austrian sales and complied with the Court's remand order. *See Giorgio Foods*, 2024 WL 3534491 at *7.

The Court's remand order responded to Commerce's possible inclusion of some potential sales for Austrian consumption in Prochamps German sales total and instructed Commerce to reconsider its determination, "{a}bsent any better explanation," that "exports to Germany were 'significantly' larger than those to France." *Id.* The Court did not require Commerce to recalculate with impossible detail the quantity of mushrooms sold in each country, but rather to justify

the finding that the German market was significantly larger than the French market. *Id.* Commerce has done this.

On remand, Commerce examined population, mushroom consumption statistics, and relative number of stores to yield a conservative estimate of Prochamp's German sales. Appx13808-13809. Commerce also evaluated correspondence from Prochamp's customers confirming that mushrooms, sorted by product code, were distributed downstream exclusively in Germany, or mostly in Germany during the relevant period. Appx13897; Appx13914-13915. Lastly, Commerce has applied a conservative adjustment that likely overstates the volume of sales to other countries, such that Prochamp's sales to the German market still exceed its sales to the French market by [

]. Appx13809. As such, Commerce has complied with the Court's remand order and supported with substantial evidence the selection of Germany as the third country comparison market.

A.    Commerce's Calculation Of Prochamp's Net German Market
Sales Volume Is Supported By Substantial Evidence And
Complies With The Remand Order

First, Giorgio argues that Commerce's "simplistic calculation"

employed "inconclusive information" and grew from a "faulty premise"

with the consequence that German and Austrian population and

mushroom consumption data and data concerning the relative number

of stores in the two countries do not permit a reasonable approximation

of the proportion of Prochamp's sales consumed in Germany.  Pl.

Comments 11-12.  Giorgio's only support for this argument comes from

its speculation that "Austrian stores may stock mushrooms in higher

quantities compared to German ones, and *vice versa*."  *Id.* at 12.  But

other than speculation, Giorgio has provided no record facts to underine

the conclusion Commerce reached.

In contrast, Commerce's remand determination resulted from a

full examination of the evidence on the record and fully complies with

the Court's remand order.  The Court reminded Commerce that it could

not exercise its statutory authority "based on speculation, conjecture,

divination, or anything short of factual findings based on substantial

11

evidence." *Giorgio Foods*, 2024 WL 3534491 at *7 (quoting *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 641 (D.C. Cir. 2010)).

Accordingly, Commerce placed facts on the record concerning the populations of Austria and Germany, the total mushroom consumption of each country, and the number of stores Prochamp's largest German customer operated in each country. Appx13808; Appx13854-13855; Appx13857-13858; Appx13844. Based on these facts, Commerce assigned a conservative presumption that the Austrian market portion of the total volume of mushrooms sold by Prochamp to its largest customer to be approximately ten percent of the total sales of German-labeled mushrooms. Appx13808-13809. Commerce then calculated the total volume of German sales by: (1) identifying the total volume of sales to that customer, (2) reducing the volume of sales by the previously removed Swiss merchandise, and (3) further reducing the volume of sales by ten percent to account for the Austrian sales presumption. *Id.* Commerce then added back the sales volume to other customers, minus a subcategory that was identified by the customer as being distributed both in Germany and another country, netting a

German market consumption total of [              ] kilograms.
Appx13809.

At the time of third-country selection the French market total volume of sales was [              ] kilograms.  Appx13809.  So even by Commerce's conservative analysis, Prochamp's sales volume for consumption in Germany remains [                    ] than the French market.  *Id.*  Moreover, Commerce applied the ten percent presumption to all of Prochamp's German language label sales to its largest customer, not just those carrying the DE/AT label.  Thus, Commerce's ten percent presumption likely overstates the volume of sales to other countries.  Appx13810.

Therefore, substantial evidence — in the form of facts on the record as well as reasonable inferences from those facts — supports Commerce's continued selection of Germany as the third-country comparison market.  By substantiating its conclusion that the Prochamp's sales for German consumption are significantly higher than for French consumption, Commerce has fully complied with the Court's remand instructions.

B.    Commerce's Adjustment Of Prochamp's German Sales
       Volume Is Supported By Substantial Evidence And Complies
       With The Remand Order

Second, Giorgio takes issue with Commerce's reliance on email

correspondence Prochamp provided from two of its customers, which

state that the sales of mushrooms to these customers were either

exclusively distributed in Germany or mainly distributed in Germany.

Appx13897; Appx13914-13915.  Giorgio faults the emails as not being

explicitly limited to the relevant time period and asserts that Commerce

should have attempted to allocate the sales of one of Prochamp's

customers to the respective markets.  Pl. Comments 13-14.  These

arguments are meritless.

The Court's remand order required Commerce to provide a

reasonable basis for selecting Germany as the third country market, not

exact precision in determining the volume of sales consumed in each

country.  *See Giorgio Foods*, 2024 WL 3534491 at *7; Appx13818-13819;

*Daewoo Elecs.*, 6 F.3d at 1520 (discussing substantial evidence as

including "reasonable inferences from the record").  Indeed, requiring

exact precision for the downstream distribution of Prochamp's sales

would be an impossible standard because that information is not

14

ordinarily kept by respondents, nor is it easily obtainable (if at all). Appx13813-13815. The emails Prochamp submitted, even if they do not precisely provide the dates and amounts of mushrooms sold in each country, nevertheless constitute record evidence supporting Commerce's conclusion that Prochamp's sales for the German market were significantly larger than its sales to the French market during the relevant time.[2]

Commerce acknowledged one of Prochamp's customers stated that a portion of the mushrooms it purchases were distributed in Germany and another country. Appx13809-13810. Still pursuing a conservative estimate, Commerce elected to exclude all of these sales from Prochamp's German market sales volume. *Id.* In other words, Giorgio complains that Commerce adjusted Prochamp's net German market

---

[2] Giorgio also points to a statement by Commerce that "over 99 percent of Prochamp's sales" to its largest competitor are consumed in Germany. Pl. Comments 13 n.2 (quoting Appx13824). Despite Commerce's observation that the record evidence could have supported a larger proportion of Prochamp's German-coded sales being destined for German consumption, Commerce nevertheless applied the conservative presumption that ten percent were bound for Austria. Appx13809-13810. Commerce remarked that these email statements were "brief and could not serve as definitive indicators of final distribution/consumption if they were the only information on the record." Appx13823.

sales volume in a light most favorable to Giorgio's contention.  *See* Appx13810.

Thus, Giorgio's argument that there is "no information on the record that would enable Commerce to determine relative volumes of" this customer's sales misses the point.  *See* Pl. Comments 14. Commerce has applied a conservative presumption such that its selection of Germany is still appropriate based on the record evidence even under the assumption that all of these sales were consumed outside Germany.

Further, Giorgio appears to argue for the first time that Commerce should have a "knowledge test" regarding the destination of these sales.  Pl. Comments at 14 & n.3.  Giorgio failed to present this argument to Commerce, and it is therefore forfeited.  *See Nippon Steel Corp. v. United States*, 732 F. Supp. 3d 1353, 1371-72 (Ct. Int'l Trade 2024).  But in any event, the argument is rooted in Giorgio's misunderstanding.  Commerce may use a "knowledge test" to determine whether a producer knew or should have known that a sale was meant for export and should be excluded from its home market sales pursuant to 19 U.S.C. § 1677b, or whether a producer knew or should have known

that a sale would be exported to the United States and should be

included in calculating the export price under 19 U.S.C. § 1677a. *Z.A.*

*Seafoods Private Ltd. v. United States*, 569 F. Supp. 3d 1338, 1352-53

(Ct. Int'l Trade 2022). These circumstances are not present in the

third-country market selection at issue here, and employing a

knowledge test would be inappropriate.[3]

III.    Giorgio's Championing Of France As A Third-Country Comparison
        Market Elides Difficulties With Prochamp's French Sales Data
        And Ignores The Smaller Volume Of French Sales

Giorgio next argues that "the Court should direct Commerce to

reconsider France as an alternative and instruct Prochamp to submit a

French sales database." Pl. Comments 16. Giorgio believes that

Prochamp's French sales data would be free of the "issues plaguing the

German comparison market data." *Id.* at 17. Because Commerce

satisfied the Court's remand instructions and its selection of Germany

_____

[3] In *Z.A. Seafoods*, which Giorgio cites, Pl. Comments 14 n.3, the Indian shrimp exporter plaintiffs argued that Vietnam could serve as a third-country market for determining normal value because they were unaware that their products sold to Vietnam were subsequently exported to the United States in a transshipment scheme to evade duties. 569 F. Supp. 3d at 1348-49. But the Court held that Commerce did not err in not employing a knowledge test outside of the two specific circumstances of establishing home market sales and establishing export price to the United States. *Id.* at 1353.

is supported by substantial evidence, there is no need for Commerce to further investigate Prochamp's smaller French sales data. The Court should sustain Commerce's determination as supported by substantial evidence even if there is a possibility that another "inconsistent conclusion{ } can be drawn from the evidence." *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) (citing *Consolo*, 383 U.S. at 620). And, in any event, Prochamp's French sales are not as straightforward as Giorgio would like.

As an initial matter, the Court rejected Giorgio's previous attempt to advocate for France as the third-country comparison market. *Giorgio Foods*, 2024 WL 3534491 at *6 & n.12 (holding that Commerce reasonably "concluded that on balance the products sold in all three markets were very similar" and that Commerce "reasonably determined that the significantly larger volume of German sales — assuming for the moment the reliability of that data — more than offset the overall slight difference in product similarity that pointed toward using France as a comparison market."). The Court should reject Prochamp's similar argument here.

18

In support of its belief that the record remains underdeveloped, Giorgio cites *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, in which the United States Court of Appeals for the Federal Circuit stated that no authority permitted "limited resources or statutory time constraints" to "override fairness or accuracy."  716 F.3d 1370, 1380 (Fed. Cir. 2013).  Giorgio's reliance on this case is inapposite.  In *Yangzhou Bestpak*, the Court's concern for accuracy and fairness stemmed from what the Court saw as a punitive margin assessment on a respondent that Commerce knew was nonresponsive from early in the proceeding, when the only other investigated respondent received a margin of zero.  *Id.* at 1379-90.

No such concerns are present here.  Commerce has not asserted "limited resources or statutory time constraints" as a justification for its mode of analysis.  *See Yangzhou Bestpak*, 716 F.3d at 1380.  Rather, Commerce made a reasoned choice between the German database with a higher sales volume of mushrooms over the French database that offered significantly less data.  Appx13825-13826.  Thus, Commerce's decision to select Germany as the third-country comparison market based on the markets' relative size satisfies its statutory responsibility

19

to establish a fair and accurate margin.  Appx13825; *see Yangzhou Bestpak*, 716 F.3d at 1379 ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible.").

Giorgio next heads off course with its argument regarding the NL/BE labeling on some of Prochamp's French sales that likely were destined for consumption in the Netherlands or Belgium.  Pl. Comments 17; Appx13811; Appx5188-5191.  Commerce did not "assert similarity between the two comparison country markets" based on an analogy between Prochamp's products labeled NL/BE and Prochamp's DE/AT-labeled products for the German and Austrian markets.  *See* Pl. Comments 17.  Rather, Commerce observed that Prochamp's reported French sales appeared to include some mushrooms that were not consumed in France, a fact that would further broaden the gulf in size between the French and German markets.  Appx13811.

Giorgio also raises the *non sequitur* argument that, based on the terms of sale of Prochamp's mushrooms to French and German customers, Prochamp may have "more insight into the downstream distribution of its preserved mushrooms in the French market than in

20

Germany." Pl. Comments 18. This contention misses the point of Commerce's determination on remand: Commerce addressed the relative size of the two markets by more accurately accounting for some German-coded sales that might be consumed outside of Germany. *See* Appx13809. Because the further developed record supports Commerce's determination, any additional level of detail that potentially might be available in the significantly smaller French market is irrelevant.[4]

Therefore, Commerce need not have requested further French data from Prochamp because the record amply supports Commerce's determination that the German market was significantly larger, in accordance with the Court's instructions on remand.

---

[4] Further, Giorgio's arguments concerning the merits of the French data are inconsistent with its arguments against the German data. In dismissing Commerce's concerns about French-labeled products sold to a Monaco-based company, Giorgio Foods asserts that "{t}here is no evidence that sales of French-labeled products to a Monaco-based company . . . and to French Overseas Territories were consumed other than in France." Pl. Comments 18-19. Thus, Giorgio appears eager to overlook facts that facially cast doubt on the country of consumption when that country would be France — but does not extend the same courtesy to Germany.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's remand determination and enter judgment in favor of the United States.

       Respectfully submitted,

       YAAKOV M. ROTH
       Acting Assistant
        Attorney General

       PATRICIA M. McCARTHY
       Director

       /s/ Tara K. Hogan
       TARA K. HOGAN
       Assistant Director

OF COUNSEL:

       /s/ Daniel Bertoni

RUSLAN KLAFEHN     DANIEL BERTONI
Attorney        Trial Attorney
Office of the Chief Counsel   Commercial Litigation Branch
 for Trade Enforcement &  Civil Division
 Compliance      U.S. Department of Justice
U.S. Department of Commerce P.O. Box 480
1401 Constitution Avenue, NW Ben Franklin Station
Washington, DC 20230   Washington, DC 20044
          (202) 353-7968

February 28, 2025     Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document complies with the Standard Chambers Procedures of the United States Court of International Trade and the Court's December 16, 2024 scheduling order, ECF No. 53, because it contains 3,862 words, including text, footnotes, and headings.

<u>     /s/ Daniel Bertoni     </u>